**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| WILLIAM ALLYN and VIRGINIA NEWKIRK,<br><br>Plaintiffs,<br><br>v.<br><br>CNL LIFESTYLE PROPERTIES, INC., JAMES M. SENEFF, THOMAS K. SITTEMA, BRUCE DOUGLAS, ROBERT J. WOODY and ROBERT A. BOURNE,<br><br>Defendants. | Case No. 6:13-cv-00132-RBD-GJK<br><br>Dispositive Motion<br>Oral Argument Requested |

**MOTION TO DISMISS AND MEMORANDUM OF LAW**
**ON BEHALF OF DEFENDANTS**
**CNL LIFESTYLE PROPERTIES, INC., JAMES M. SENEFF, THOMAS K.**
**SITTEMA, BRUCE DOUGLAS, ROBERT J. WOODY and ROBERT A. BOURNE**

# TABLE OF CONTENTS

**Page**

I.   Relief Requested ........................................................................................ 1

II.  Summary of Basis for Request .................................................................. 1

III. Factual Background .................................................................................... 4

    A.   Overview of CNL Lifestyle Properties, Inc. ...................................... 4

    B.   Plaintiffs Elect to Purchase Additional Unlisted Shares through the DRP....... 6

    C.   CLP Discloses that the Price of its Unlisted Shares is "Subjective" ............... 7

    D.   CLP Discloses that Secondary Sales Took Place at Less than the DRP Share Price .................................................................................. 9

    E.   FINRA Requirements Concerning Valuation of Unlisted REIT Shares ........ 10

    F.   CLP Announces a Net Asset Value Per Share Estimate in August 2012 ....... 11

    G.   Plaintiffs Are Not Unsophisticated Investors .................................. 12

    H.   Plaintiffs Initiate Suit Without Submitting a Litigation Demand to the CLP Board.................................................................................. 13

    I.   The Director Defendants................................................................. 14

IV.  Legal Standard for Motion to Dismiss........................................................ 15

V.   Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Against the Director Defendants .......................................................................... 17

    A.   Plaintiffs' Breach of Fiduciary Claim is a Derivative Claim Improperly Pleaded as a Direct Claim.............................................. 17

    B.   The Business Judgment Rule Bars Plaintiffs' Breach of Fiduciary Duty Claim....................................................................................... 21

        1.   Directors Are Presumed to Satisfy Their Fiduciary Duties ................ 21

        2.   Plaintiffs Fail to Plead a Breach of the Duty of Good Faith (or Loyalty)............................................................................... 23

i

       3.     Plaintiffs Fail to Plead a Breach of the Duty of Care ......................... 27

       4.     Maryland Does Not Recognize a "Duty of Candor" Except In the Merger Context ................................................................................... 28

  C.    The Breach of Fiduciary Duty Claim Must Be Dismissed for Several Additional Reasons ......................................................................... 29

       1.     Maryland Law Bars Any Challenge to the DRP Pricing in the Absence of Actual Fraud ................................................................. 30

       2.     The Director Defendants' Subjective Price Estimate is not Actionable ...................................................................................... 31

       3.     Maryland Law Does Not Recognize Plaintiffs' Standalone Claim for Breach of Fiduciary Duty ............................................................ 32

VI.   Plaintiffs Fail to State a Claim for Unjust Enrichment Against the Company .......... 32

  A.    An Express Contract Exists Between CLP and Plaintiffs.............................. 33

  B.    Plaintiffs Do Not Plead Requisite Elements of an Unjust Enrichment Claim 34

  C.    Plaintiffs Do Not Allege Actionable Loss ...................................................... 35

VII.  Plaintiffs' Constructive Trust Claim Must Be Dismissed.......................................... 37

VIII.  Conclusion ................................................................................................................ 38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*200 N. Gilmor, LLC v. Capital One, Nat. Ass'n,*
  863 F. Supp. 2d 480 (D. Md. 2012) .......................................................................31

*Am. Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010) ............................................................................16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .......................................................................15, 22, 24, 36

*Auerbach v. Bd. of Educ.,*
  136 F.3d 104 (2d Cir. 1998) ................................................................................36

*Azzo v. Jetro Rest. Depot, LLC,*
  No. 3:11-CV-324-J-34JRK, 2011 WL 1357557 (M.D. Fla. Apr. 11, 2011) ..........15

*Beavers v. A.O. Smith Elec. Prods. Co.,*
  265 F. App'x 772 (11th Cir. 2008) ......................................................................15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................15, 22, 24, 36

*Bender v. Schwartz,*
  917 A.2d 142 (Md. Ct. Spec. App. 2007) ...........................................................22

*Bresnahan v. Bresnahan,*
  693 A.2d 1 (Md. Ct. Spec. App. 1997) ................................................................32

*Britton v. Tech., Automation & Mgmt., Inc.,*
  No. JFM 08-536, 2008 WL 2477453 (D. Md. June 16, 2008) ..............................33

*Brown v. E.F. Hutton Group, Inc.,*
  991 F.2d 1020 (2d Cir. 1993) ..............................................................................27

*City of St. Clair Shores v. Inland W. Retail Real Estate Trust,*
  635 F. Supp. 2d 783 (N.D. Ill. 2009) ...................................................................17

*Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.,*
  747 A.2d 600 (Md. 2000) ....................................................................................33

*Consortium Atl. Realty Trust, Inc. v. Plumbers & Pipefitters Nat'l Pension Fund,*
  No. 365879-V, 2013 WL 605865 (Md. Cir. Ct. Feb. 5, 2013) ..............................28

*Devereux v. Berger*,
    284 A.2d 605 (Md. 1971) ................................................................22

*Diamond "S" Dev. Corp. v. Mercantile Bank*,
    989 So. 2d 696 (Fla. 1st DCA 2008) ............................................33, 37

*Diamond State Brewery v. De La Rigaudiere*,
    17 A.2d 313 (Del. Ch. 1941).............................................................30

*Ehlert v. Singer*,
    245 F.3d 1313 (11th Cir. 2001) .......................................................16

*Ex parte Regions Fin. Corp.*,
    67 So. 3d 45 (Ala. 2010)..................................................................28

*Fellner v. Cameron*,
    No. 2:10-CV-155-FtM-99SPC, 2012 WL 3518379 (M.D. Fla. July 25, 2012),
    *adopted* 2012 WL 3518178 (M.D. Fla. Aug. 14, 2012) .......................16

*From The Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*,
    803 A.2d 548 (Md. 2002) ................................................................37

*Godwin Pumps of Am., Inc. v. Ramer*,
    No. 8:11-cv-00580, 2011 WL 2181183 (M.D. Fla. June 3, 2011) ...........35

*GS2 Corp. v. Regions Bank*,
    11-23458-CIV, 2012 WL 1014750 (S.D. Fla. Mar. 23, 2012) ...............34

*Hartford Fin. Servs. Grp., Inc. v. Carl J. Meil, Jr., Inc.*,
    No. WDQ-10-2720, 2011 WL 1743177 (D. Md. May 5, 2011)...............32

*Heard v. Perkins*,
    441 B.R. 701 (N.D. Ala. 2010) ........................................................22

*Hill v. Cross Country Settlements, LLC*,
    936 A.2d 343 (Md. 2007) ................................................................35

*Hudson v. Prime Retail, Inc.*,
    No. 24-C-03-5806, 2004 WL 1982383 (Md. Cir. Ct. Apr. 1, 2004) .......23

*In re Apple REITs Litig.*,
    No. 11–CV–2919, 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2012).... passim

*In re Barton-Cotton, Inc.*,
    No. 09-12066-DK, 2012 WL 2803742 (Bankr. D. Md. July 10, 2012) ...............22

*In re Mut. Funds Inv. Litig.*,
    384 F. Supp. 2d 873 (D. Md. 2005) ...................................................................20

*Int'l Ins. Co. v. Johns*,
    874 F.2d 1447 (11th Cir. 1989) ....................................................................17

*Jackson v. 2109 Brandywine, LLC*,
    952 A.2d 304 (Md. Ct. Spec. App. 2008) ..................................................35

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ....................................................................15

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
    No. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) .................19

*Kann v. Kann*,
    690 A.2d 509 (Md. 1997) ................................................................................32

*Latty v. St. Joseph's Soc'y of the Sacred Heart, Inc.*,
    198 Md. App. 254 (Md. Ct. Spec. App. Apr. 4, 2011) ...........................32

*Lewis v. Scotten Dillon Co.*,
    306 A.2d 755 (Del. Ch. 1973) .......................................................................30

*McGee v. S-Bay Dev., LLC*,
    No. 8:11-CV-1091-T-27TGW, 2012 WL 760797 (M.D. Fla. Mar. 8, 2012) ........................37

*McGovern v. Deutsche Post Global Mail, Ltd.*,
    No. JFM-04-0060, 2004 WL 1764088 (D. Md. Aug. 4, 2004) ...............32

*Michelson v. Duncan*,
    407 A.2d 211 (Del. 1979) ...............................................................................30

*Mona v. Mona Electric Grp., Inc.*,
    934 A.2d 450 (Md. Ct. Spec. App. 2007) ..................................................18

*Mulhall v. UNITE HERE Local 355*,
    618 F.3d 1279 (11th Cir. 2010) ....................................................................36

*Parish v. Md. & Va. Milk Producers Ass'n, Inc.*,
    242 A.2d 512 (Md. 1968) ...............................................................................22

*Parker v. Columbia Bank*,
    604 A.2d 521 (Md. Ct. Spec. App. 1992) .........................................31, 32

*Provence v. Palm Beach Taverns, Inc.*,
  676 So. 2d 1022 (Fla. 4th DCA 1996) ..................................................................38

*Ramos v. Bank of Am., N.A.*,
  No. DKC 11-3022, 2012 WL 5928732 (D. Md. Nov. 26, 2012) ...........................34

*Randall v. Scott*,
  610 F.3d 701 (11th Cir. 2010) .............................................................................15

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,
  506 A.2d 173 (Del. 1986) ....................................................................................28

*Shapiro v. Greenfield*,
  764 A.2d 270 (Md. Ct. Spec. App. 2000) .............................................................23

*Shenker v. Laureate Educ., Inc.*,
  983 A.2d 408 (Md. 2009) ...............................................................18, 19, 28, 29

*Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  No. 12-60430-CIV, 2013 WL 1131628 (S.D. Fla. Mar. 18, 2013) ........................16

*Stender v. Cardwell*,
  No. 07-cv-02503-REB-MJW, 2010 WL 1930260 (D. Colo. May 12, 2010) .........28

*Stroud v. Grace*,
  606 A.2d 75 (Del. 1992) ......................................................................................29

*Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*,
  190 F.Supp.2d 785 (D. Md. 2002) .......................................................................32

*Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*,
  No. 5:05-CV-260-OCGRJ, 2007 WL 1114045 (M.D. Fla. Apr. 12, 2007) ............34

*Universal Express, Inc. v. SEC*,
  177 F. App'x. 52 (11th Cir. 2006) .......................................................................16

*Waller v. Waller*,
  49 A.2d 449 (Md. 1946) .......................................................................................18

*Wasserman v. Kay*,
  14 A.3d 1193, 1213 (Md. Ct. Spec. App. 2011) .............................................28, 32

*Werbowsky v. Collomb*,
  766 A.2d 123 (Md. 2001) ...............................................................................18, 20

vi

*Wimmer v. Wimmer*,
    414 A.2d 1254 (Md. 1980) .................................................................................37

*Wittman v. Crooke*,
    707 A.2d 422 (Md. Ct. Spec. App. 1998).........................................................22

*Wynn v. Hewlett-Packard Co.*,
    No. 8:11-CV-01287-AW, 2012 WL 113390 (D. Md. Jan. 12, 2012).................36

## STATUTES

26 U.S.C. § 857(a) (2008)...........................................................................................6

28 U.S.C. § 1332(d) (2011) ......................................................................................14

Del. Code Ann. tit. 8, § 157 (West 2004) .................................................................30

Md. Code Ann., Corps. & Ass'ns § 2-203(b) (West 2001) ......................................30

Md. Code Ann., Corps. & Ass'ns. § 2-405.1(West 1999)........................................18

Md. Code Ann., Corps. & Ass'ns. § 2-405.1(a) (West 1999) ...................................18

Md. Code Ann. Corps. & Ass'ns § 2-405.1(c) (West 1999) .....................................21

Md. Code Ann. Corps. & Ass'ns § 2-405.1(e) (West 1999) .....................................22

Md. Code Ann. Corps. & Ass'ns § 2-405.1(g) (West 1999) .....................................18

## OTHER AUTHORITIES

James J. Hanks, Jr., Maryland Corporation Law (Supp. 2012) .........................21, 23, 28

1 Federal Procedure, Lawyer's Edition § 1:16 (2013)..............................................36

Fed. R. Civ. P. 9(b) ...................................................................................................16

Fed. R. Civ. P. 23.1 ...................................................................................................20

## I.       RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), Defendants James M.

Seneff, Thomas K. Sittema, Bruce Douglas, Robert J. Woody, Robert A. Bourne

(collectively, the "Director Defendants"), and CNL Lifestyle Properties, Inc. ("CLP" or "the

Company"), move this Court for an order dismissing Plaintiffs' Class Action Complaint (the

"Complaint") with prejudice.  The Motion is based upon the included Defendants'

Memorandum of Law in support of their Motion to Dismiss the Plaintiffs' Complaint, the

documents attached hereto, the records and pleadings filed in this action, and such other

matters as may be presented to the Court at the time of a hearing.

## II.      SUMMARY OF BASIS FOR REQUEST

Plaintiffs assert claims on behalf of a putative class of purchasers of CLP stock who

acquired their shares after April 1, 2010 solely through the Company's Distribution

Reinvestment Plan (the "DRP").  Plaintiffs' central allegation is that the price of shares sold

by the Company to shareholders through the DRP ("DRP shares") was "inflated" above its

"true value" because an estimate of the value of CLP shares as of August 1, 2012 resulted in

a value that was less than the price at which the Company sold DRP shares during the

previous two years.  Plaintiffs assert that the sale of DRP shares at this purportedly inflated

price was a breach of the Director Defendants' fiduciary duties, through either a "refusal to

inform themselves of the true value" of the Company's shares or by "deliberately charging" a

price higher than "fair value."  Compl. ¶¶ 4, 8.  According to Plaintiffs, the Director

Defendants "failed to act in the face of a known duty to act" to re-price the DRP shares to the

"true value" earlier than August 2012.  *Id.* ¶¶ 3-4.  The Complaint, however, identifies no

legal, regulatory, or factual basis giving rise to such a purported duty.  Indeed, the August 2012 estimation of the value of CLP's shares was in full accord with the regulations of the Financial Industry Regulatory Authority ("FINRA").[1]  *See infra* Parts III.E-F.  In addition, Maryland law, which governs as the Company's state of incorporation, has codified safeguards that explicitly insulate corporate directors from the kind of second-guessing of their business judgments found in the Complaint.

To understand why Plaintiffs' allegations fail to state a legally sufficient claim, it is important to recognize that the Complaint alleges no violations of state or federal securities laws or of securities industry standards.  The Complaint does not allege that CLP or the Director Defendants committed fraud or made misrepresentations in documents filed with the Securities and Exchange Commission ("SEC") concerning the DRP shares.  The Complaint contains no allegations of self-dealing or conflicts of interest by the Director Defendants.  Nor does the Complaint allege the Director Defendants made intentional, reckless, or negligent misrepresentations or omissions in connection with DRP share sales to Plaintiffs.

Plaintiffs' fiduciary based allegations concern "the management and administration in the affairs of CNL," Compl. ¶ 62, and must be dismissed as a matter of law in view of the statutory protections afforded to the Director Defendants.  As an initial matter, Maryland law requires that Plaintiffs' breach of fiduciary duty claim against the Director Defendants be brought as a derivative action by or on behalf of the Company.  No direct action against corporate directors for breach of fiduciary duty is recognized by Maryland law based on the

---

[1]    FINRA is the independent regulator for all securities firms doing business in the United States.  In addition, sales of CLP securities are regulated by state securities regulators in each state in which sales occur.

circumstances alleged in the Complaint.  *See infra* Part V.A.  In addition, the Director

Defendants are protected by Maryland's codification of the business judgment rule, which

presumes that their decisions regarding the DRP shares were made in good faith, with due

care, and in the best interests of the Company.  The Complaint is devoid of the particularized

allegations required by Maryland law to overcome at the pleading stage the statutory

presumption that the Director Defendants satisfied their duties.  Plaintiffs therefore fail to

state a claim for breach of fiduciary duty as a matter of law.  *See infra* Part V.B.  Moreover,

absent fraud, which is nowhere alleged in the Complaint, the DRP share price established by

the Director Defendants is "conclusive" as a matter of law and immune from challenge.  *See*

*infra* Part V.C.1.  Finally, as a consequence of the allegedly inflated DRP price, the

Complaint asserts that the Company was unjustly enriched (Count III) and is liable in

constructive trust (Count II).  These claims are dependent on the deficient breach of fiduciary

duty claim against the Director Defendants and thus fail as a matter of law.  *See infra* Parts

VI and VII.

 For these and other reasons discussed below, Plaintiffs' Complaint should be

dismissed as a matter of law with prejudice and without leave to re-plead.

III.    **FACTUAL BACKGROUND**[2]

   A.    **Overview of CNL Lifestyle Properties, Inc.**

Real estate investment trusts ("REITs") such as CLP are companies that own or operate income-producing properties on behalf of their shareholders, whose investments are pooled to acquire and/or manage such properties.  REITs are exempt from certain federal taxes if, among other things, they distribute 90 percent of their taxable income to their investors.  *See* CNL Lifestyle Properties, Inc., Prospectus and Sticker Supplements at 1 (Apr. 19, 2010) ("Prospectus") (attached as Exhibit F).  CLP has used the proceeds from public share offerings and sales of shares in the DRP to invest in lifestyle properties such as ski resorts, golf courses, marinas, and theme parks.  *Id.*  The Complaint contains no allegations challenging the Company's business plan or its investment decisions.

A REIT may be publicly-traded on a national stock exchange or "non-exchange traded" (also known as "unlisted").  CLP is an unlisted REIT incorporated in Maryland.  *See* Prospectus at 1.[3]  CLP's shares have been registered with the SEC through the filing of registration statements pursuant to the Securities Act of 1933, which describe the Company and its shares.  CLP is also subject to SEC reporting requirements, including the obligation to file periodic reports containing audited financial statements.  CLP's initial offering of registered but unlisted shares commenced on April 16, 2004 and terminated on March 31,

---

[2]    The facts in this section are drawn from the Complaint, the documents referenced therein, the Company's public filings with the SEC, and the agreements governing the relationship between the Company and Plaintiffs.  The Court may take judicial notice of such documents in deciding this motion to dismiss.  *See infra* at 16-17.

[3]    Prior to April 2008, CLP was known as CNL Income Properties Inc.  *See* Articles of Incorporation and Restatement of CNL Lifestyle Properties, Inc. (f/k/a CNL Income Properties, Inc.) (Mar. 10, 2004) ("Articles of Incorporation") (attached as Exhibit A).

2006.  *Id.* at 6.  A second offering commenced on April 4, 2006 and terminated on April 4, 2008.  *Id.*  CLP's third and final offering of registered, unlisted shares commenced on April 9, 2008 and was closed to new investments effective April 9, 2011.  *Id.*  The registration statements for each of the three offerings registered shares to be sold to the public at $10.00 per share and a smaller number of shares to be sold to CLP stockholders through the DRP.  *Id.* at 32.

Although CLP's shares are registered with the SEC, they are not listed or traded on a national stock exchange.  There is no public market for CLP shares; its shares are thus considered "illiquid."  *See* CNL Lifestyle Properties, Inc., Annual Report (Form 10-K) at 23 (Mar. 21, 2011) ("2010 10-K") ("There is no public market for our shares on which to base market value and there can be no assurance that one will develop.") (attached as Exhibit H).[4] In addition to the registration statements, CLP filed with the SEC and gave to each prospective shareholder a Prospectus that provided details concerning investment in CLP. CLP repeatedly disclosed the risk of illiquidity to prospective investors.  *See, e.g.*, Prospectus at 8 ("Selling your shares will be difficult, because there is no market for our common stock."); *id.* at p. 5 ("There is no market for our shares and we do not expect to list our shares in the near future.").  CLP further warned investors that "[i]f you are able to sell your shares prior to listing, you would likely have to sell them at a substantial discount."  *Id.*  Under the Company's Articles of Incorporation filed with its initial registration statement and described in its investment Prospectus provided to all shareholders, the Company (i) will automatically

---

[4]    *Accord* CNL Lifestyle Properties, Inc., Annual Report (Form 10-K) at 20 (Mar. 25, 2010) ("2009 10-K") (attached as Exhibit E).

dissolve and terminate on December 31, 2015, unless that date is extended,[5] or (ii) its common stock will become publicly-traded on a national exchange, or (iii) there will be another type of liquidity event such as a merger.  *See id.* at 4.

The Complaint contains no claims that CLP's registration statements, financial statements, or Prospectuses were misleading.

###   B.    Plaintiffs Elect to Purchase Additional Unlisted Shares through the DRP

CLP declares cash dividends (known as "distributions") on a monthly basis and pays distributions to stockholders on a quarterly basis.  *See* Prospectus at 102 (Distribution Policy); *see also* 26 U.S.C. § 857(a) (2008).  Plaintiffs could have elected to receive these periodic distributions in cash.  *See* Prospectus at 96.  Plaintiffs instead elected to have their cash distributions reinvested in additional unlisted CLP stock pursuant to the DRP.  *See* Compl. ¶¶ 12-13.  As set forth in the Prospectus, the distribution proceeds were reinvested in additional CLP shares through the DRP at either:

> (a) the per share offering price for reinvestment plan shares under our current best efforts offering [$10], (b) $9.50 per share if there is no current best efforts offering, unless adjusted by our board of directors, which price shall in no event be less than 95% of the fair market value as determined by our board of directors at such time, or (c) the market price following the listing of our shares on a national stock exchange or over-the-counter market or the inclusion of our shares for quotation on the NASDAQ National Market System, which we refer to as listing or listed.

Prospectus at 96.

---

[5]    This provision is currently under consideration for amendment.  The Board has proposed that the Charter be amended so that, by December 31, 2015, the Company will be required only to undertake to provide stockholders with liquidity of their investment.

During the period in which CLP offered shares to the public at $10.00 per share (ending April 2011), the Company also offered shares for reinvestment purchase through the DRP at $9.50 per share.[6]  After the close of CLP's final share offering, shares were no longer offered to the public but CLP continued to sell shares to current shareholders through the DRP.  On May 2, 2011, CLP filed a registration statement to register for sale up to $250 million in shares of common stock to current shareholders through the DRP at the price of $9.50 per share.  *See* CNL Lifestyle Properties, Inc., Registration Statement (Form S-3D) (May 2, 2011) ("Form S-3D") (attached as Exhibit I); Compl. ¶¶ 34, 43.  Plaintiffs thereafter continued to purchase shares through the DRP.  The Complaint concerns only shares purchased through the DRP and the putative class is comprised of DRP share purchasers during the period April 1, 2010 to the present.  *Id.* ¶ 54.[7]

### C.      CLP Discloses that the Price of its Unlisted Shares is "Subjective"

Whereas the share price of a publicly traded REIT (like all publicly traded companies) is set by the market in daily trading, the share price of an unlisted REIT is set by its board of directors in its "sole discretion."  Prospectus at p. 5.  There is no public market price of an unlisted REIT.  CLP disclosed that its offering price of $10.00 for common shares and $9.50 per share for stockholders through the DRP was based on a "subjective" assessment of what the Company "believed" prospective purchasers would pay for the shares and the amount of funds the Company "believed" necessary to achieve its investment

---

[6]      The $0.50 difference is consistent with REIT qualification rules, under which REITs may not sell stock at less than 5% off the offering price.

[7]      Plaintiffs' class definition is overbroad on its own terms.  Although the proposed class runs from April 1, 2010 to present, *see* Compl. ¶ 54, the Complaint alleges that CLP re-priced its shares at "fair value" on or after August 2012.  *See id.* ¶ 51.

priorities.  *See* Prospectus at 8 (noting three factors used to determine its offering price: "the price that we believed investors would pay for our shares; estimated fees to be paid to third parties and to our Advisor and its affiliates, and the expenses of this offering and funds we believed should be available for us to invest in properties, loans and other permitted investments"); 2009 10-K at 19; 2010 10-K at 23; CNL Lifestyle Properties, Inc., Annual Report (Form 10-K) at 40 (Mar. 21, 2012) ("2011 10-K") (attached as Exhibit K).

Plaintiffs do not allege that the registration statements or the related Prospectuses contain factual representations that the price of CLP shares purchased through the DRP had been determined based upon any valuation methodology or was intended to reflect the "true value" of CLP's stock.  CLP made no such representations of fact.  To the contrary, the Company repeatedly disclosed to investors that the offering price was subjectively determined and not tied to the Company's financial performance or other quantitative metrics: "***The price of our shares is subjective and may not bear any relationship to what a stockholder could receive if their shares were resold.***"  Prospectus at 8 (emphasis in original); 2009 10-K at 19 (same); 2010 10-K at 23 (same); 2011 10-K at 40 (same); *accord* Compl. ¶ 41.  As the Company admonished in 2010 and 2011, "the price per share of our common stock was $10.00. . . . We did not take into account the value of the underlying assets in determining the price per share."  2009 10-K at 30; 2010 10-K at 34; 2011 10-K at 57.

**D.      CLP Discloses that Secondary Sales Took Place at Less than the DRP Share Price**

Despite the illiquidity of CLP stock, investors may buy and sell shares in unregulated secondary transactions among investors.[8]  CLP disclosed in its reports to shareholders the price at which Company shares were transferred in secondary sales among investors.  *See, e.g.*, Compl. ¶¶ 6, 46.  Throughout the putative class period, these disclosed secondary sale prices were less than that which Plaintiffs paid to acquire stock through the DRP.  For example, as of March 2010, shortly before the April 1, 2010 date that begins the alleged class period, CLP disclosed that shares traded "at an average price of $8.97 per share during 2009 . . . $9.21 per share during 2008 and $8.96 per share during 2007," amounts below the price at which DRP shares were offered at the time.  2009 10-K at 34.  CLP disclosed that shares traded in secondary transactions "at an average price of $6.63 per share during 2010," which was less than the estimated value of the shares determined by the Company in August 2012.  2010 10-K at 34.  CLP also disclosed and advised against accepting two "mini-tender offers" to purchase stock from CLP investors at, respectively, prices of $4.50 and $4.75 per share.  Compl. ¶ 47.

Plaintiffs in their discretion could have exited the DRP or accepted the mini-tender offers.  There are no allegations that Plaintiffs attempted to do either.  There are also no allegations that the Company erected barriers to exit the DRP.  The opposite is true: "There

---

[8]      These sales are sometimes colloquially known as "secondary market transactions."  *See, e.g.*, Compl. ¶ 45.  That term is inaccurate to the extent it suggests that shares are traded on a functioning liquid "market" with "fair market value" pricing based on real time information.

are no fees associated with a participant's terminating his or her interest in the reinvestment plan." Prospectus at 97-98.

    **E.**    **FINRA Requirements Concerning Valuation of Unlisted REIT Shares**

    CLP continued to sell its common stock at $10.00 and DRP shares at $9.50 throughout the offering period that ended in April 2011, which FINRA regulations expressly permitted. *See* FINRA Regulatory Notice 09-09 at 2 (Feb. 2009) ("FINRA Notice 09-09") ("During the offering period, it may be reasonable to determine that the estimated value is the value at which the shares are being offered to the public.") (attached as Exhibit D).[9]  The Complaint identifies no law, rule or regulation that requires an unlisted REIT to price its shares to reflect a "true value," "appraised value," or "market value" of its shares at any given point in time during the offering period.  Rather, FINRA rules expressly permit unlisted REITs to maintain a fixed selling price during the offering period and for *18 months after the close of the offering*, at which time an "estimated value" of their shares must be provided. *See id.* at 2.  For the purpose of customer account statements, "[t]he 18-month requirement was designed to ensure that investors are provided with reasonably current valuations of these illiquid securities. In addition, . . . the rule ensures . . . adequate time to appraise the program's assets and operations and calculate an estimated value." *Id.*  The Company contemporaneously announced at the time it closed its final unlisted share offering in April 2011 that it would estimate the value of its common stock within 18 months as

---

[9]    The regulation reflects an obligation of broker-dealers to provide a valuation of unlisted REIT securities in a customer's account statement.  The value of a REIT security included in the securities customer account statement in practice is the valuation of the security made by the issuer. *See, e.g.*, FINRA Notice 09-09.

required by FINRA, *see* Compl. ¶ 48, which CLP did as of August 1, 2012.  *See* CNL

Lifestyle Properties, Inc., Quarterly Report (Form 10-Q) at 58 (Aug. 14, 2012) ("Q2 2012

10-Q") (attached as Exhibit L).

### F.      CLP Announces a Net Asset Value Per Share Estimate in August 2012

It is the estimated fair value per share as of August 1, 2012, made in accordance with

FINRA requirements, which serves as the lynchpin of Plaintiffs' claims.  Prior to the

valuation estimate, the Company warned investors well in advance that the forthcoming

estimated value required by FINRA would be of limited use to investors.  The estimate

would be "based upon a number of estimates and assumptions that may not be accurate or

complete," and could materially differ from a valuation made by other parties using different

methodologies.  2011 10-K at 57; *see also* Compl. ¶¶ 48, 50.  FINRA does not define

"estimated value" with specificity, nor does it concretely prescribe how to determine the

estimated value of a non-traded REIT's shares.  *See* FINRA Notice 09-09 at 2.

On August 14, 2012, the Company announced an estimated valuation of $7.31 per

share.  *See* Q2 2012 10-Q at 56-58.  This figure represented the Company's net asset value

on a per-share basis.  In general, the Company arrived at the estimated value by forecasting

the cash flow of its assets over a ten year period, estimating the asset value at the end of that

ten year period, and discounting to present value.  *See* Compl. ¶ 50 (quoting Q2 2012 10-Q).

In announcing the share value estimate, the Company noted that:

> The estimated fair value per share value established is not
> necessarily indicative of the price that our shares would trade at
> on a national securities exchange or the amount a stockholder
> would obtain if they tried to sell their shares or if we were
> acquired by another company or we liquidated our assets and

> distributed the proceeds after paying all of our expenses and
> liabilities.

Q2 2012 10-Q at 58.  Concurrent with the share value estimate, effective August 9, 2012,

CLP's Board approved an amendment to the DRP that revised the DRP share price to be "a

5% discount from the Company's then-current estimated fair value per share as determined

by the Board of Directors from time to time."  *See id.* at 40.  The amended DRP price

equated to $6.95 per DRP share based on the $7.31 value estimate.  *See id.*  The August 2012

estimated fair value per share and adjusted price of DRP shares was significantly higher than

the mini-tender offers ($4.50 and $4.75), Compl. ¶ 47, and the secondary transactions

($5.06), *id.* ¶¶ 45-46, alleged in the Complaint.

Plaintiffs do not allege that the Company's estimate failed to comply with FINRA's

standards concerning the required timing or method for valuation of non-traded REIT shares.

Rather, Plaintiffs allege that the Director Defendants violated a fiduciary duty to act sooner,

asserting they must have known the "true value" of the unlisted shares was lower.  This type

of hindsight-based claim, one of several currently before courts, seeks to challenge the

pricing of unlisted REITs.  Recently, the U.S. District Court for the Eastern District of New

York dismissed claims based on allegations substantially similar to Plaintiffs' allegations in

this case.  *See In re Apple REITs Litig.*, No. 11–CV–2919, 2013 WL 1386202 (E.D.N.Y.

Apr. 3, 2012); *see infra* Parts V.B.2-3 (discussing the *Apple REITs* decision).

### G.    Plaintiffs Are Not Unsophisticated Investors

CLP offers shares only to qualified investors that meet established financial

suitability standards.  In particular, qualified investors must have (a) a net worth of at least

$250,000 or (b) a gross annual income of at least $70,000 and a net worth of at least

$70,000—excluding the value of one's home, home furnishings or personal automobiles.

*See* Prospectus at i.

When purchasing CLP stock, both Plaintiffs signed a contract known as a "subscription agreement."  By signing the subscription agreements, Plaintiffs acknowledged having received and reviewed the entire Prospectus and the suitability standards.  *See* Allyn Subscription Agreement at 2 (attached as Exhibit B); Newkirk Subscription Agreement at 2 (attached as Exhibit C); Allyn DRP Enrollment Form (attached as Exhibit G).  CLP's suitability standards require that an investor, among other things, understand and acknowledge:

> the fundamental risks of the investment, the risk that the subscriber may lose the entire investment, the lack of liquidity of our shares, the restrictions on transferability of our shares, the background and qualifications of our Advisor and its affiliates, and the tax consequences of the investment.

Prospectus at 137.  The Prospectus made clear that CLP was a long-term investment.  *See id.* at p. 5 ("[T]here is no market for our shares, so stockholders may not be able to promptly sell their shares at a desired price.  You should only consider purchasing our shares as a long-term investment.").  Plaintiffs' allegations reveal that they understood they were making a long-term investment and that they might have to wait years before seeing a return of principal.  *See, e.g.*, Compl. ¶ 30.

### H.  Plaintiffs Initiate Suit Without Submitting a Litigation Demand to the CLP Board

Following the valuation, Plaintiffs did not submit a litigation demand to the Company's Board of Directors (the "Board") raising concerns about the price of shares sold through the DRP and requesting action against the Director Defendants as required by

13

Maryland corporate law and Federal Rule of Civil Procedure 23.1.  They instead waited five

months and filed this lawsuit on January 18, 2013 against CLP and certain current and former

members of its Board of Directors.

### I.      The Director Defendants

CLP has five directors on its Board, four of whom are Director Defendants in this

case: James M. Seneff, Jr., Thomas K. Sittema, Bruce Douglas, and Robert J. Woody.  *See*

Compl. ¶¶ 15-19.  Adam J. Ford, an independent director appointed in October 2012, is not a

named defendant.  *See* CNL Lifestyle Properties, Inc., Current Report (Form 8-K) (Oct. 26,

2012) (attached as Exhibit M).  Three members of the Board—Messrs. Douglas, Ford, and

Woody—are independent directors.[10]

---

[10]     Plaintiffs' Complaint pleads that this Court has jurisdiction over their claims under the
Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  *See* Compl. ¶ 10.  On March 18,
2013, the Court *sua sponte* ordered Plaintiffs to show cause why the Complaint "should not
be dismissed for lack of diversity jurisdiction under 28 U.S.C. Section 1332(d)."  *See* ECF
No. 30.  Plaintiffs submitted on March 28, 2013 a response to the Court's Order indicating
that Plaintiffs and Defendants were residents of different states and asserting that it was
sufficiently pleaded that "any member of a class of plaintiffs is a citizen of a State different
from any defendant" as required by CAFA, 28 U.S.C. § 1332(d)(2)(a) (2011).  *See* ECF No.
32.  On March 29, 2013 the Court entered an Order stating it was "satisfied that it has
jurisdiction over this matter."  ECF No. 33.

Neither the Court's March 18, 2013 show cause order nor Plaintiffs' March 28, 2013
submission addressed other limitations on federal subject matter jurisdiction in CAFA
implicated by Plaintiffs' claims asserted in the Complaint.  Specifically, CAFA states that the
diversity provision of 28 U.S.C. § 1332(d)(2) does not apply to a claim:

> (B) that relates to the internal affairs or governance of a corporation or other form
> of business enterprise and that arises under or by virtue of the laws of the State in
> which such corporation or business enterprise is incorporated or organized; or (C)
> that relates to the rights, duties (including fiduciary duties), and obligations
> relating to or created by or pursuant to any security (as defined under section
> 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77(b)(a)(1)) and the regulations
> issued thereunder).

28 U.S.C. § 1332(d)(9)(2006).  Plaintiffs' claim for breach of fiduciary duty and related state
law claims concern CLP's corporate governance and alleged obligations relating to CLP's
securities.  These claims render CAFA unavailable to Plaintiffs as a basis for invoking this

Footnote continued on next page

## IV.   LEGAL STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court must accept all factual allegations in a complaint as true, but need not accept as true any legal conclusions.  *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *see, e.g.*, Compl. ¶¶ 22-29 (alleging conclusions of law regarding fiduciary duties).  It must determine whether any "well-pleaded factual allegations . . . *plausibly* give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679 (emphasis added).  Where factual allegations are "merely consistent with" liability, they stop "short of the line between [inadequate] possibility and [required] plausibility of entitlement to relief."  *Id*. at 678 (internal quotation marks omitted).  Accordingly, a court may disregard threadbare recitals of a cause of action's elements or mere conclusory statements in the complaint.  *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010).

---

Footnote continued from previous page

Court's jurisdiction.  Defendants note that Plaintiffs March 28, 2013 submission suggests there may be complete diversity among the parties, in which case this Court may have diversity jurisdiction under 28 U.S.C. 1332(a).  Plaintiffs have not, however, invoked this Court's jurisdiction under 28 U.S.C. § 1332(a) in the Complaint and the Complaint contains no allegations of the Director Defendants' citizenship.  The existence of diversity jurisdiction must be evident on the face of the complaint in order for a federal court to assume jurisdiction.  *See Beavers v. A.O. Smith Elec. Prods. Co.*, 265 F. App'x 772, 779 (11th Cir. 2008); *Azzo v. Jetro Rest. Depot, LLC*, No. 3:11-CV-324-J-34JRK, 2011 WL 1357557, at *2 (M.D. Fla. Apr. 11, 2011).

Plaintiffs must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, Plaintiffs do not allege fraud expressly, but to the extent that Plaintiffs' claims rest on conclusory allegations that Defendants "deliberately charg[ed] Class members inflated prices," Compl. ¶¶ 4, 8, Rule 9(b)'s heightened pleading standards govern. *E.g.*, *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 12-60430-CIV, 2013 WL 1131628, at *4 (S.D. Fla. Mar. 18, 2013) (applying Rule 9(b) to unjust enrichment and constructive trust claims arising from the marketing of certain securities); *Fellner v. Cameron*, No. 2:10-CV-155-FtM-99SPC, 2012 WL 3518379 (M.D. Fla. July 25, 2012), *adopted* 2012 WL 3518178 (M.D. Fla. Aug. 14, 2012) (applying Rule 9(b) to fiduciary duty claim). The Court must dismiss all claims sounding in fraud unless Plaintiffs specify "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

A motion to dismiss may be ripe for adjudication even if the Court must delve into certain extrinsic evidence to assess the sufficiency of the Complaint. The Court may take judicial notice of certain documents—the Company's regulatory filings with the SEC, the Prospectus, subscription agreement between the parties, and documents referenced or quoted in the Complaint—without converting this motion to dismiss into a motion for summary judgment. *See Ehlert v. Singer*, 245 F.3d 1313, 1317 n. 4 (11th Cir. 2001) (judicial notice may be taken of documents publicly filed with the SEC in deciding a motion to dismiss); *see also Universal Express, Inc. v. SEC*, 177 F. App'x. 52, 53 (11th Cir. 2006) ("A district court

may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment"); *Apple REITs Litig.*, 2013 WL 1386202, at \*8 (granting motion to dismiss in favor of non-traded REIT and affiliated individuals after a review of SEC filings and REIT subscription agreements).

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST THE DIRECTOR DEFENDANTS

### A.   Plaintiffs' Breach of Fiduciary Claim is a Derivative Claim Improperly Pleaded as a Direct Claim

Plaintiffs' breach of fiduciary duty claim constitutes an attack on the Director Defendants' prerogative to value the Company's assets in a time and manner consistent with their sound business judgment and in compliance with applicable rules and regulations. Such a claim must be brought as a derivative claim under Maryland law, not as the direct claim Plaintiffs purport to bring here. Plaintiffs were thus required to make a litigation demand to the CLP Board of Directors before filing this lawsuit, which they failed to do.

The duties owed to a corporation by its directors in undertaking their responsibilities are codified in Section 2-405.1 of the Maryland Corporations and Associations Article.[11] Section 2-405.1 provides that a director must perform his or her duties (1) in good faith, (2) in a manner the director reasonably believes to be in the best interests of the corporation, and (3) with the care that an ordinarily prudent person in a like position would use under

---

[11]   Under Florida's choice-of-law rules, Maryland law governs the breach of fiduciary claim because CNL is a Maryland corporation, *see* Compl. ¶ 14. *See Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989) ("We, therefore, feel comfortable in applying Restatement (Second) of Conflicts of Laws § 309, which provides that the law of the state of incorporation governs the liabilities of the officers or directors to the corporation"); *City of St. Clair Shores v. Inland W. Retail Real Estate Trust*, 635 F. Supp. 2d 783, 797-98 (N.D. Ill. 2009) (applying Maryland law to shareholders' breach of fiduciary claims against directors of a REIT).

similar circumstances.  Md. Code Ann. Corps. & Ass'ns § 2-405.1(a) (West 1999).  "[I]t is

without question that § 2-405.1(a) governs the [duties] owed by directors when they

undertake managerial decisions on behalf of the corporation."  *Shenker v. Laureate Educ.,*

*Inc.*, 983 A.2d 408, 420 (Md. 2009).

The fiduciary duties codified in Section 2-405.1 may be enforced solely by the

corporation.  *See* Md. Code Ann. Corps. & Ass'ns § 2-405.1 (West 1999); *Werbowsky v.*

*Collomb*, 766 A.2d 123, 133 (Md. 2001).  Maryland law explicitly provides that a director's

fiduciary duties are not "enforceable *otherwise than by the corporation or in the right of the*

*corporation*."  Md. Code Ann. Corps. & Ass'ns § 2-405.1(g) (West 1999) (emphasis added).

Thus, Maryland courts have recognized that "[o]rdinarily, a shareholder does not have

standing to sue to redress an injury to the corporation."  *Mona v. Mona Electric Grp., Inc.*,

934 A.2d 450, 464 (Md. Ct. Spec. App. 2007).  This general rule is subject only to a very

limited exception inapplicable to Plaintiffs' claim, as discussed below.  *See Shenker*, 983

A.2d at 423.

Because a director's statutory fiduciary duties run to the corporation, shareholders

may not directly sue a director unless they are attempting to "enforce a right that is personal

to [them]" instead of the corporation.  *Mona*, 934 A.2d at 464; *see, e.g.*, *Waller v. Waller,* 49

A.2d 449, 453 (Md. 1946) (holding that a shareholder may bring a direct suit for violation of

a duty "arising from contract or otherwise").  If a director "undertake[s] managerial decisions

on behalf of the corporation," however, that conduct is governed by the statutory duties owed

to the corporation under section 2-405.1(a) of the Maryland corporate law.  *Shenker*, 983

A.2d at 420.  That will be true even if stockholders allegedly suffer some incidental injury,

such as a loss in the value of their shares.  *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. RDB 05-841, 2005 WL 2989343, at *6 (D. Md. Nov. 3, 2005) ("[A]ny dilution in the price or value of the stockholders' shares is not an actionable direct injury.").

Here, Plaintiffs are not enforcing their personal rights by claiming they were intentionally, recklessly, or negligently misled by the Director Defendants under federal or state law in connection with their acquisition of DRP shares.  Rather, their breach of fiduciary duty claim is grounded in the Director Defendants' "managerial decisions on behalf of the corporation," *Shenker*, 983 A.2d at 420, concerning the price of unlisted DRP shares. This is made clear by their allegations that the Director Defendants failed to act in "good faith" and did not take "any reasonable steps to inform themselves as to a fair value for CNL shares."  Compl. ¶¶ 62-63; *see also id.* ¶ 45 ("the Board did not [take] appropriate steps to inform itself whether the $9.50 price . . . bore any relation to the fair value of CNL shares"). Put differently, Plaintiffs allege that Director Defendants failed in the "management and administration in the affairs of CNL," *id.* ¶ 62, because they did not assess the "true value" or "fair value" of the Company's shares prior to the valuation announced in August 2012. Plaintiffs' allegations amount to a classic mismanagement claim attacking the Director Defendants' inadequate "oversight" of the Company.

The Board's decision whether, when, and how to value the Company's assets is a legal responsibility that runs to the Company.  CLP's Articles of Incorporation make this clear by authorizing the Board to manage the Company and specifically empowering it to:

> [D]etermine the value of all or any part of the Company
> Property and of any services, Securities, or other consideration
> to be furnished to or acquired by the Company, and to revalue
> all or any part of the Company Property, all in accordance with

> such appraisals or other information as are reasonable, in their
> sole judgment.

Articles of Incorporation, Art. III, § xi.  The judgment to be exercised by the Director

Defendants that is reflected in the Articles of Incorporation necessarily includes deciding

what mix of information to rely upon when valuing the Company's assets.  An alleged failure

to stay "reasonably informed" is therefore a breach harming the Company first and foremost,

and touching the investors only secondarily.  *See, e.g.*, *In re Mut. Funds Inv. Litig.*, 384 F.

Supp. 2d 873, 878 (D. Md. 2005) (applying Delaware law and noting that oversight claim

was derivative in nature).

Plaintiffs did not make a litigation demand to the CLP Board of Directors or plead

reasons for their failure to do so.  *See* Fed. R. Civ. P. 23.1 (requiring a complaint "state with

particularity: any effort by the plaintiff to obtain the desired action from the directors . . . and;

the reasons for . . . not making the effort").[12]  The breach of fiduciary duty claim must be

dismissed as a matter of law because (i) Plaintiffs have improperly alleged a breach of

fiduciary duty claim as a direct claim against the Director Defendants, instead of a derivative

claim on behalf of the Company; and (ii) Plaintiffs have failed to make a litigation demand

on the Board.

---

[12]    Plaintiffs cannot allege circumstances that would excuse them from making a litigation
demand to the CLP Board.  *See Werbowsky*, 766 A.2d at 133-34 (noting requirements to
bring derivative lawsuit without demand on the board of directors include irreparable harm
and director conflict of interests).  Moreover, the Complaint fails to satisfy the other pleading
requirements for derivative cases set forth in Federal Rule of Civil Procedure 23.1, including
that the Complaint must be verified.

**B.      The Business Judgment Rule Bars Plaintiffs' Breach of Fiduciary Duty Claim**

Even assuming for purposes of this motion that Plaintiffs can assert their breach of fiduciary duty claim against the Director Defendants as a direct claim, it still must be dismissed as a matter of law because the Complaint lacks allegations sufficient to rebut Maryland's statutory presumption that the Director Defendants satisfied their fiduciary duties.  The statutory presumption, also known as the business judgment rule, exists to protect directors against hindsight criticism of the type presented by Plaintiffs' Complaint concerning the Director Defendants' administration of their corporate duties.

The Complaint asserts that the Director Defendants breached duties of care, loyalty, good faith, and candor.  Compl. ¶¶ 62-63.  While the Complaint makes a number of legal conclusions about the duties of care, loyalty, and good faith, *id*. ¶¶ 22-29, it fails to specify clearly what duties *each* Director Defendant allegedly violated, and how *each* of them did so. To the extent Plaintiffs' claim rests on a violation of the duties of "good faith and based on being reasonably informed of the facts relevant to their acts as Directors," *id.* ¶ 62, it cannot survive.  Similarly, to the extent Plaintiffs' theory is that the Director Defendants breached their fiduciary duties by "deliberately" selling DRP shares at an inflated price, *id.* ¶ 4, such allegations are likewise deficient and must be dismissed as a matter of law.

**1.      Directors Are Presumed to Satisfy Their Fiduciary Duties**

Directors of a Maryland corporation are immune from liability for their business decisions if they fulfill their statutory duties to the corporation.  Md. Code Ann. Corps. & Ass'ns § 2-405.1(c) (West 1999); James J. Hanks, Jr., Maryland Corporation Law § 7.21 (Supp. 2012) (noting that section 2-405.1 applies to acts and omissions).  Maryland has

codified the business judgment rule, which presumes that a director has satisfied his statutory duties of care, loyalty and good faith to the corporation absent substantial evidence to the contrary. *See* Md. Code Ann. Corps. & Ass'ns § 2-405.1(e) (West 1999). Under the business judgment rule, "it is not [the Court's] function to attempt to substitute its judgment for that of the persons who are lawfully in control of a corporation's affairs." *Devereux v. Berger*, 284 A.2d 605, 612 (Md. 1971). Rather, "[i]t is well established that courts generally will not interfere with the internal management of a corporation at the request of a minority stockholder or a member." *Parish v. Md. & Va. Milk Producers Ass'n, Inc*., 242 A.2d 512, 540 (Md. 1968); *Wittman v. Crooke*, 707 A.2d 422, 425 (Md. Ct. Spec. App. 1998) (Maryland courts "generally will not interfere with the internal management of a corporation . . . .").

To overcome the business judgment rule and plead a viable claim as a matter of law, Plaintiffs must allege particularized facts showing that (a) the Directors did not act in good faith in a manner they believed was in the Company's best interest and (b) the Directors have so departed from the standard of care that their judgment is no longer entitled to deference. Plaintiffs must allege "more than mere suspicions and must state a claim in particular, rather than conclusory terms." *Bender v. Schwartz*, 917 A.2d 142, 152-53 (Md. Ct. Spec. App. 2007). *Iqbal* and *Twombly* increase Plaintiffs' pleading burden under the business judgment rule. *See Heard v. Perkins*, 441 B.R. 701, 711 (N.D. Ala. 2010). If there are no well-pled facts to rebut the presumptions of the business judgment rule, there can be no plausible claim for liability. *In re Barton-Cotton, Inc.*, No. 09-12066-DK, 2012 WL 2803742, at *12 (Bankr. D. Md. July 10, 2012). Here, the Complaint does not even mention the business judgment

rule, let alone allege with particularity how the Director Defendants have departed from the applicable standard of care.

### 2. Plaintiffs Fail to Plead a Breach of the Duty of Good Faith (or Loyalty)

Plaintiffs' allegations are insufficient to rebut the presumption that the Director Defendants acted in good faith and in the best interests of the Company. Under Maryland's statute, "'[g]ood faith' is generally synonymous with adherence to what is referred to in other states as the duty of loyalty or the duty of fair dealing." Hanks, *supra*, § 6.6. To rebut the presumption that the Board acted in good faith and the best interests of the Company, Plaintiff must allege that a majority of the Board either (i) failed to exercise independent judgment, or (ii) had a material personal interest in the transactions at issue. *Hudson v. Prime Retail, Inc.*, No. 24-C-03-5806, 2004 WL 1982383, at *11 (Md. Cir. Ct. Apr. 1, 2004); *see Shapiro v. Greenfield*, 764 A.2d 270, 282 (Md. Ct. Spec. App. 2000) ("[W]hen a director's loyalty is questioned, courts must seek to ascertain whether the conflict has deprived stockholders of a 'neutral decision-making body.") (internal quotation marks omitted).

Plaintiffs' claim must be dismissed absent particularized allegations that would rebut the presumption the Director Defendants satisfied their duty of good faith or loyalty and acted in the best interests of the Company with respect to the pricing of the DRP shares. The Complaint contains *no* allegations that *any* of the Director Defendants failed to act independently, or *any* allegations from which the Court can infer that any of the Director Defendants failed to act independently. There are likewise no allegations that any Director Defendant engaged in self-dealing, had conflicts of interest, or otherwise had a material

personal stake in the valuation of CLP shares.  Any breach of fiduciary theory based on breach of the duty of good faith or loyalty must accordingly be rejected as a matter of law.

The conclusory allegation that the Director Defendants breached their fiduciary duties by "deliberately charging . . . inflated prices" for DRP shares, *see* Compl. ¶¶ 4, 8, does not save Plaintiffs' claim.  The Complaint does not assert claims for the torts of fraud or deceit, or violations of state or federal securities laws.  There are no allegations of reliance, scienter, materiality, causation, or other facts that are necessary to support a claim based on deliberately inflated DRP share pricing.  Rather, the Complaint suggests only that the price difference between the DRP share sales and the secondary transactions and mini-tender offers must be explained by deliberate price inflation giving rise to a breach of a fiduciary duty for failure to act sooner to adjust the DRP share price to its "true value."  Compl. ¶¶ 51-52.  This inference is unwarranted, and it is insufficient to allege a claim for breach of fiduciary duty as a matter of law under Maryland law, *Iqbal*, and *Twombly*—much less the heightened pleading standard of Rule 9(b) to the extent Plaintiffs' allegations are intended to suggest fraud by the Director Defendants.

The Complaint provides no rationale why secondary transactions in an illiquid market should bear on the Director Defendants' belief, if any, concerning the "true value" of CLP shares.  The Company disclosed to investors that "[t]here is no public market for our shares on which to base market value and there can be no assurance that one will develop."  Prospectus at 8.  The Complaint similarly offers no rationale why the mini-tender offers alleged by Plaintiffs have any bearing on "true value."  In fact, one third-party offer expressly stated that the Company's shares are worth more than the offer price.  *See* CNL

24

Lifestyle Properties, Inc., Current Report (Form 8-K) at Ex. 99.3 (Feb. 6, 2012) (noting party

making offer "believe[s] that the company's shares are worth more than [its] offer price, and

therefore, [its] offer may not represent a fair assessment of the shares' potential value if a

liquidation of the company's assets were to occur") (attached as Exhibit J).  And, of course,

all these "lower prices" were contemporaneously disclosed to Plaintiffs, who nonetheless

continued to purchase DRP shares.

Moreover, Plaintiffs have identified no requirement that unlisted REIT shares must be

sold at the price of their "true value" or how such a "true value" must be determined.  In

order to breach a duty, that duty must first exist.  Absent a duty to re-price unlisted REIT

shares to their "true value" prior to the date required by the governing FINRA regulations,

there can be no breach of fiduciary duty.  As referenced above, the Company's pricing of the

DRP shares was consistent with FINRA's rules concerning the timing for valuation of

unlisted REIT shares within 18 months after the close of the share offering.  *See supra* Parts

III.E-F.

Even if Plaintiffs somehow were able to transform their claim into one for

misrepresentation, the Complaint identifies no representations that were made to purchasers

of DRP shares that the purchase price reflected the "true value" of the shares or omissions

that could have led Plaintiffs to believe the price reflected "fair value."  To the contrary, until

the August 2012 point-in-time valuation, CLP's publicly-filed documents regularly disclosed

that the price of its shares was "subjective and may not bear any relationship to what a

stockholder could receive if their shares were resold," 2009 10-K at 19; 2010 10-K at 23;

2011 10-K at 40, that "[t]here is no public market for our shares on which to base market

value," Prospectus at 8, and that "[i]f you are able to sell your shares prior to listing, you would likely have to sell them at a substantial discount," *id.* at p. 5.  The Company did advise participants in the DRP that the price for DRP shares would change "in the event that our board of directors determines that the fair market value of our common stock has changed." *See* Compl. ¶¶ 43-45 (quoting Form S-3D).  When the fair value estimate of CLP's shares was made in August 2012 consistent with FINRA requirements (*i.e.*, within 18 months after the close of the offering), the DRP share price accordingly was adjusted to 95% of the Board's estimate.  *See* Q2 2012 Form 10-Q at 40; *see also* Compl. ¶ 50 (noting adjustment in CLP share value).  In other words, it is apparent from the allegations of the Complaint and public filings of which this Court may take judicial notice that CLP's and the Director Defendants' actions were consistent with disclosures concerning the DRP.

The *Apple REITs* decision is instructive.  The plaintiffs there brought breach of fiduciary duty, misrepresentation, and unjust enrichment claims (among others) against unlisted REITs, their directors, and other individuals.  These allegations were based, in part, on the REITs' supposedly "inflated" share price that remained unchanged throughout the offering period.  The court, however, dismissed these claims for three reasons that apply with equal force to Plaintiffs' allegations here.  First, the REITs' comprehensive and thorough disclosures that the valuation was established arbitrarily and "may not reflect the true value of the [shares]" insulated them from liability.  *Id.* at *14.  Second, the "realities and inherent difficulties in ascertaining the value of REIT shares necessarily means that investment valuations 'can only fairly be characterized as subjective opinions.'"  *Id.*  Finally, there are a number of different ways to value REITs, thereby "underscoring the impossibility of

calculating the REITs' value." *Id.* For these reasons, the court concluded that "Defendants cannot be alleged to have misrepresented or omitted that which they plainly disclosed." *Id.* at *12 (citing *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993)).

### 3. Plaintiffs Fail to Plead a Breach of the Duty of Care

Plaintiffs' bare-bones assertion that the Director Defendants failed to stay "reasonably informed," Compl. ¶ 62, does not state a direct claim for the breach of the duty of care reflected in Section 2-405.1. We are aware of no Maryland case that has allowed a direct claim for breach of fiduciary duty to proceed on this theory. Moreover, Plaintiffs have not specified how the CLP Board's oversight mechanisms were inadequate or how the Director Defendants knew of these inadequacies and consciously ignored them. Indeed, as discussed above, CLP and the Director Defendants specifically disclosed the "subjective" basis upon which the DRP share price rested as well as the inputs to the 2012 valuation estimate.

Plaintiffs' allegations are also based on a false assumption—that there is a legal responsibility or mandate to stay "reasonably informed" of a non-traded REIT's "true value." There can be no such ongoing responsibility, as "[t]here is no public market for [CLP] shares on which to base market value." Prospectus at 8. Once again, the *Apple REITs* decision is on-point. It instructs that the "realities and inherent difficulties in ascertaining the value of REIT shares necessarily means that investment valuations 'can only fairly be characterized as subjective opinions.'" *Apple REITs Litig.*, 2013 WL 1386202, at *14. There are numerous ways to compute the "actual value" of a non-traded REIT; each methodology could "produce different results, underscoring the impossibility of calculating the REITs' value." *Id.* Just as the inscrutability of a non-traded REIT's "true value" insulates its directors from

misrepresentation claims, *see id.*, it must also protect them from claims that they failed to stay "reasonably informed" of the REIT's "true value."

### 4. Maryland Does Not Recognize a "Duty of Candor" Except In the Merger Context

Section 2.405.1 does not include a "duty of candor" as alleged by Plaintiffs among the Board's statutory duties. The Maryland Court of Appeals, Maryland's highest court, has recognized a direct common law claim for breach of the "duty of candor" solely in the context of a cash-out merger, which has no bearing on Plaintiffs' DRP pricing allegations here. *See Shenker* 983 A.2d at 420 (citing *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986)). Courts interpreting *Shenker* have limited the holding to its specific factual context. *See Wasserman v. Kay*, 14 A.3d 1193, 1213 (Md. Ct. Spec. App. 2011) ("*Shenker* has a narrow application in the corporate context"). A recent decision by a Maryland circuit court noted that "*Shenker* is limited, until the Court of Appeals says otherwise, to a cash-out merger when the decision to sell the corporation has already been made." *Consortium Atl. Realty Trust, Inc. v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 365879-V, 2013 WL 605865 (Md. Cir. Ct. Feb. 5, 2013) (quoting Hanks, *supra*, § 6.6).[13] *Shenker*, moreover, was unequivocal that in the context of decisions relating to "the management of the business and affairs of the corporation," only the duties under § 2-

---

[13]    *See also Ex parte Regions Fin. Corp.*, 67 So. 3d 45, 54 (Ala. 2010) ("[T]he limited rule announced by the *Shenker* court . . . is inapplicable here, where the shareholders are essentially seeking damages for fraud based on the defendants' misrepresentations covering up their alleged mismanagement." (applying Maryland law)); *Stender v. Cardwell*, No. 07-cv-02503-REB-MJW, 2010 WL 1930260, at *4 (D. Colo. May 12, 2010) ("The duties of candor and maximization of value that directors directly owe to shareholders recognized in *Shenker* arise in a very narrow context – specifically, that of a cash-out merger when the decision to sell the corporation already has been made." (applying Maryland law)).

28

405.1(a) apply, and those statutory duties are enforceable only by the corporation.  Here,
Plaintiffs' claims regarding the "management and administration in the affairs of [CLP],"
Compl. ¶ 62, undoubtedly implicate the "management of the business and affairs of the
corporation," *Shenker*, 983 A.2d at 419.  It is thus enforceable only by the Company or
through a proper derivative action.

Even if the "duty of candor," or what Plaintiffs characterize as a "duty of full
disclosure of all material facts relevant to shareholders' transactions with the Company,"
Compl. ¶ 23, existed outside of the "cash-out merger" context, it would apply only when a
board of directors seeks shareholder action.  *See Stroud v. Grace*, 606 A.2d 75, 84 (Del.
1992).  Here, there has been no request for shareholder action or vote.  Rather, the DRP was
made available as an option for CLP shareholders with respect to their distributions, and
shareholders were free to take advantage of the DRP, or not, in their discretion.

C.  **The Breach of Fiduciary Duty Claim Must Be Dismissed for Several
Additional Reasons**

Plaintiffs' breach of fiduciary duty claim must be dismissed as a matter of law for
several additional, independent reasons.  The price of CLP's stock as determined by its
directors is dispositive and cannot be challenged in the absence of fraud, which Plaintiffs
have not alleged.  *See infra* Part V.C.1.  CLP's "subjective" price for DRP shares is not
actionable as a basis for a breach of fiduciary duty claim against the Director Defendants, *see
infra* Part V.C.2, and Maryland law does not in any event recognize an independent cause of
action for breach of fiduciary duty, *see infra* Part V.C.3.  Each of these reasons separately
requires dismissal of Plaintiffs' breach of fiduciary duty claim.

### 1.    Maryland Law Bars Any Challenge to the DRP Pricing in the Absence of Actual Fraud

Under Maryland corporate law,"[i]n the absence of actual fraud in the transaction, the minimum consideration [for the price of a company's stock] stated in the charter or determined by the board of directors in its resolution is conclusive for all purposes." Md. Code Ann. Corps. & Ass'ns § 2-203(b) (West 2001).[14]

This provision protects a director's business judgment relating to stock valuation. Defendants have identified no Maryland cases interpreting this statutory provision, but judicial interpretations of a materially similar Delaware statute are persuasive. *See* Del. Code Ann. tit. 8, § 157 (West 2004) ("In the absence of actual fraud in the transaction, the judgment of the directors as to the consideration for the issuance of such rights or options and the sufficiency thereof shall be conclusive.").  Delaware courts have repeatedly held that "a showing of no more than excessive valuation is insufficient to overcome the conclusiveness of the directors' judgment." *Diamond State Brewery v. De La Rigaudiere*, 17 A.2d 313, 316 (Del. Ch. 1941); *see also Michelson v. Duncan*, 407 A.2d 211, 224 (Del. 1979) ("Section 157 was intended to protect directors' business judgment in consideration inuring to the corporation in exchange for creating and issuing stock options."); *Lewis v. Scotten Dillon Co.*, 306 A.2d 755, 757 (Del. Ch. 1973) ("However, excessive valuation, standing alone, [is] not enough unless it is so gross as to lead the Court to conclude that it was due, not to an honest error of judgment but to bad faith or a reckless indifference to the rights of others.").

---

[14]    As used in this section, "minimum consideration" refers to the minimum price for which the Company sold DRP shares, which is $9.50.  It does not mean "par value."

Plaintiffs offer no particularized allegations that the Director Defendants fraudulently established the DRP price, nor do Plaintiffs claim they received no consideration for the DRP shares they purchased.  Accordingly, the DRP price set by the Director Defendants is "conclusive" under Section 2-203(b) and is thus immune from challenge by way of Plaintiffs' claims.

> ### 2.     The Director Defendants' Subjective Price Estimate is not Actionable

The Director Defendants' "subjective" share price (no matter what the share price is) is not an actionable statement of fact that can support a breach of fiduciary duty claim based on alleged deliberate inflation.  *See Parker v. Columbia Bank*, 604 A.2d 521, 528 (Md. Ct. Spec. App. 1992).  Plaintiffs' deliberate inflation theory cannot rest on the Director Defendants' intent, opinions, or subjective beliefs unless the Complaint alleges with particularity that each Director Defendant did not actually hold such views.  *See 200 N. Gilmor, LLC v. Capital One, Nat. Ass'n*, 863 F. Supp. 2d 480, 493 (D. Md. 2012).  Plaintiffs have made no such particularized allegations.  In addition, no deliberate inflation of the DRP share price can exist as a basis for asserting a breach of fiduciary duty in light of the Company's repeated disclosures that its share prices represented *opinions* based on subjective belief, *not* statements of fact.  *See supra* Part III.C; 2010 10-K at 23 ("The price of our shares is subjective and may not bear any relationship to what a stockholder could receive if their shares were resold."); *see also Apple REITs Litig.*, 2013 WL 1386202, at *14 (noting that investment valuation of unlisted REITs "can only fairly be characterized as subjective opinions").  Under Maryland law mere statements of belief, estimate, or opinion

are not actionable as fraud because they do not constitute a false representation of material

"fact."  *Parker*, 604 A.2d at 528.

### 3.    Maryland Law Does Not Recognize Plaintiffs' Standalone Claim for Breach of Fiduciary Duty

Breach of fiduciary duty is not a freestanding cause of action under Maryland law.

*See Wasserman*, 14 A.3d at 1219.  In *Kann v. Kann*, a leading case on breach of fiduciary

duty, the Court of Appeals held that "there is no universal or omnibus tort for the redress of

breach of fiduciary duty by any and all fiduciaries." 690 A.2d 509, 521 (Md. 1997).

Consistent with *Kann*, courts applying Maryland law have widely held that "breach of

fiduciary duty is not an independent cause of action for damages." *Hartford Fin. Servs. Grp.,*

*Inc. v. Carl J. Meil, Jr., Inc*., No. WDQ-10-2720, 2011 WL 1743177, at *5 (D. Md. May 5,

2011).[15]  Because breach of fiduciary duty is the only claim for relief Plaintiffs have asserted

against the Director Defendants, that claim must be dismissed.

## VI.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST THE COMPANY

Plaintiffs' unjust enrichment claim against the Company must be dismissed for

several independent reasons.  First, Plaintiffs cannot state a claim for unjust enrichment

---

[15]    *See also Latty v. St. Joseph's Soc'y of the Sacred Heart, Inc.*, 198 Md. App. 254, 271 (Md. Ct. Spec. App. Apr. 4, 2011) ("Maryland courts generally do not recognize breach of fiduciary duty as a standalone tort. . . . [A] claim for monetary damages at law [based on breach of fiduciary duty] does not constitute a separate cause of action."); *McGovern v. Deutsche Post Global Mail, Ltd.*, No. JFM-04-0060, 2004 WL 1764088, at *12 (D. Md. Aug. 4, 2004) ("[A] careful reading of *Kann* and its progeny leads to the conclusion that breach of fiduciary duty can give rise to a cause of action—that is, it can be a component of a cause of action—but it cannot be a cause of action standing alone."); *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 801 (D. Md. 2002) (breach of fiduciary duty can be part of other causes of action, but no independent tort for breach of fiduciary duty exists); *Bresnahan v. Bresnahan*, 693 A.2d 1, 5 (Md. Ct. Spec. App. 1997) ("In light of *Kann*, it is doubtful that  . . . [the] independent tort of breach of fiduciary tort has survived.").

because enforceable contracts governed their relationship with the Company.  Second, Plaintiffs fail to plead dispositive elements of the unjust enrichment claim with particularity, including how the Company was "enriched" and how its conduct was inequitable.  Third, the Court lacks jurisdiction over Plaintiffs' claims—Plaintiffs suffered no cognizable Article III injury and their claims are unripe.

### A.     An Express Contract Exists Between CLP and Plaintiffs

An unjust enrichment claim "may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) (internal quotation marks omitted); *Britton v. Tech., Automation & Mgmt., Inc.*, No. JFM 08-536, 2008 WL 2477453, at *6 (D. Md. June 16, 2008) (dismissing unjust enrichment claim in light of "Stockholders Agreement and the Deferred Compensation Agreement"); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).[16]  Plaintiffs were required to sign subscription agreements in order to purchase shares in CLP, and thus be eligible to participate in the DRP.  Allyn Subscription Agreement at 2; Newkirk Subscription Agreement at 2; *see also* Prospectus at 135 ("All subscribers must complete and execute our subscription agreement . . . in order to purchase shares in the offering.").  Plaintiffs' unjust enrichment claim is barred by the existence of these express contracts.  *See Apple REITs Litig.*, 2013 WL 1386202, at *20 ("The Subscription Agreements and Acknowledgement of

---

[16]    Maryland courts have on rare occasion recognized exceptions to this result "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully address a subject matter." *Dashiell*, 747 A.2d at 608-09 (footnotes omitted).  Here, Plaintiffs have not alleged fraud, breach of contract, or any other particularized facts that would warrant departure from the general rule.

Risk forms between Plaintiffs and [non-traded REIT defendants] constitute the basis on which the rights of the parties are governed, rather than a theory of unjust enrichment.").[17]

In addition, the terms of the DRP contain a provision concerning "Absence of Liability" that specifically provides that the Company will not have "any responsibility or liability as to the value of the Company's Shares."  Prospectus, App'x A (Amended and Restated Reinvestment Plan).  Having acknowledged the terms of the DRP by executing the subscription agreement, Plaintiffs are barred from asserting liability against CLP based on the price at which they purchased shares in the DRP or any subsequent estimation of the value of such shares.

### B.    Plaintiffs Do Not Plead Requisite Elements of an Unjust Enrichment Claim

Except for a threadbare recitation of the elements of their claim, Plaintiffs' claim for unjust enrichment merely incorporates by reference allegations that support Plaintiffs' other claims, and nothing more.  This is insufficient to state a claim.  *E.g.*, *Ramos v. Bank of Am., N.A.*, No. DKC 11-3022, 2012 WL 5928732, at *4 (D. Md. Nov. 26, 2012); *GS2 Corp. v. Regions Bank*, 11-23458-CIV, 2012 WL 1014750, at *3 (S.D. Fla. Mar. 23, 2012).

To state a claim for unjust enrichment, "a plaintiff must show: (1) it conferred a benefit on the defendant of which the defendant is aware, (2) the defendant voluntarily

---

[17]    Plaintiffs have made no allegations about where these agreements were executed, or which state's common law the Company supposedly violated.  The subscription agreement provides that all rights arising under it, "shall be governed by, and interpreted in accordance with, the laws of the State of Maryland."  Whether Maryland or Florida law controls is immaterial, as the same result would obtain under either.  *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-CV-260-OCGRJ, 2007 WL 1114045, at *2 (M.D. Fla. Apr. 12, 2007) (noting that a choice-of-law analysis is unnecessary where there is no conflict of law).

accepted and retained the benefit conferred, and (3) the circumstances would make it inequitable for the defendant to retain the benefit without paying for it." *Godwin Pumps of Am., Inc. v. Ramer*, No. 8:11-cv-00580, 2011 WL 2181183, at *3 (M.D. Fla. June 3, 2011); *see also Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). "[T]he burden is on the plaintiff to establish that the defendant holds plaintiff's money and that it would be unconscionable for him to retain it." *Jackson v. 2109 Brandywine, LLC*, 952 A.2d 304, 327 (Md. Ct. Spec. App. 2008).

Here, because the Complaint fails to state an actionable breach of fiduciary duty claim for fraud, it follows that there is no predicate inequitable or unconscionable conduct to support an unjust enrichment claim. In addition, Plaintiffs have not adequately alleged a benefit conferred by Plaintiffs to CLP—Plaintiffs received shares of stock through the DRP in return for their reinvested distributions as specified in CLP's registration statements, Prospectuses, and in the DRP itself. Nor have Plaintiffs adequately alleged that CLP has retained the alleged benefit conferred to the Company—to the contrary, consistent with CLP's investment strategy, proceeds from the sale of CLP shares have been used to invest in lifestyle properties to generate income that is in turn returned to stockholders in the form of distributions (either as cash or additional stock through the DRP at the shareholder's discretion). *See supra* Part III.

**C.     Plaintiffs Do Not Allege Actionable Loss**

Plaintiffs have not alleged a legally cognizable injury. Because CLP shares are non-traded, they have no quantifiable "true value." *Contra* Compl. ¶ 4. In the absence of a "true value" of CLP shares, Plaintiffs cannot establish a diminution in amount of their investments,

nor can they establish an objective baseline against which CLP shares were "inflated." *See Apple REITs Litig.*, 2013 WL 1386202, at \*20 (dismissing unjust enrichment claim for failing to plead loss). That CLP issued two *subjective* opinions of share value at two different points in time does not mean Plaintiffs have suffered an *objective* injury. Tellingly, Plaintiffs have pleaded no facts plausibly suggesting a loss in connection with this claim, instead making the type of conclusory allegations of harm that this Court must disregard under *Twombly* and *Iqbal*. *See* Compl. ¶ 72 (alleging that CLP has retained money "belonging to" Plaintiffs).

Even if cognizable, Plaintiffs' alleged injury is unripe. "The doctrine of ripeness dictates that courts should decide only existing substantial controversies, not hypothetical questions and possibilities; thus, ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." 1 Federal Procedure, Lawyer's Edition § 1:16 (2013); *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir. 2010). Plaintiffs' alleged harm—purportedly the difference between the $9.50 DRP share price and the $7.31 August 2012 valuation—is not ripe because it is contingent on the 2015 liquidity event, when the REIT terminates, goes public, or is merged with another entity. *See, e.g.*, *Auerbach v. Bd. of Educ.*, 136 F.3d 104, 109 (2d Cir. 1998) (dismissing as unripe claims that retirement plan was discriminatory because employees had yet to retire); *Wynn v. Hewlett-Packard Co.*, No. 8:11-CV-01287-AW, 2012 WL 113390, at \*4 (D. Md. Jan. 12, 2012) (no claim of negligent misrepresentation where plaintiff retired before stock benefits would vest). The failure to allege a ripe, cognizable injury requires the dismissal of all of Plaintiffs' claims.

## VII.   PLAINTIFFS' CONSTRUCTIVE TRUST CLAIM MUST BE DISMISSED

Whether Maryland or Florida law applies, Plaintiffs' constructive trust claim fails because it is not an independent cause of action, but a type of equitable relief that cannot exist in the absence of fraud or unjust enrichment.  *See Diamond*, 989 So. 2d at 697 ("[A] constructive trust is not a traditional cause of action, but an equitable remedy that must be based upon an established cause of action."); *McGee v. S-Bay Dev., LLC*, No. 8:11-CV-1091-T-27TGW, 2012 WL 760797, at *8 (M.D. Fla. Mar. 8, 2012); *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md. 1980) ("*remedy* [of constructive trust] is applied by operation of law where property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it. The purpose of the *remedy* is to prevent the unjust enrichment of the holder of the property") (emphasis added) (citations omitted).

Plaintiffs have failed to plead any viable theory of harm.  The purpose of a constructive trust is to prevent unjust enrichment of the holder of legal title, and "[a]n essential element of constructive trusts is fraud."  *From The Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*, 803 A.2d 548, 567 n.23 (Md. 2002); *Wimmer*, 414 A.2d at 1258.  Plaintiffs do not plead fraud, misrepresentation, or any other improper conduct that would justify a constructive trust to recoup the difference in the purchase price of DRP shares and CLP's later estimate.  Because Plaintiffs have failed to allege a predicate

act that would serve as the basis for a constructive trust, the constructive trust claim must be dismissed.[18]

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.

---

[18]   To the extent Florida law may be applicable to Plaintiffs' unjust enrichment claim against CLP, the claim also fails because Plaintiffs have failed to assert a claim for unjust enrichment. *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1025 (Fla. 4th DCA 1996) (requiring unjust enrichment).

Dated:    May 1, 2013                              Respectfully submitted,

By:    /s/  James Toscano
            James Toscano (Florida Bar No. 899909)
            Kristopher Kest (Florida Bar No. 15411)
            Lowndes, Drosdick, Doster, Kantor
               & Reed, P.A.
            215 North Eola Drive
            Orlando, FL  32801
            phone: 407-418-6260
            fax: 407-843-4444
            James.Toscano@lowndes-law.com

            *Florida Counsel for Defendants:*
            *CNL Lifestyle Properties, Inc.*
            *James M. Seneff*
            *Thomas K. Sittema*
            *Bruce Douglas*
            *Robert J. Woody*
            *Robert A. Bourne*


By:    /s/  Scott B. Schreiber
            Scott B. Schreiber
            James W. Thomas, Jr.
            Arpan Sura
            Arnold & Porter LLP
            555 Twelfth Street, NW
            Washington, DC 20004-1206
            phone: 202-942-5672
            fax: 202-942-5999
            Scott. Schreiber@aporter.com

            *Lead Counsel for Defendants:*
            *CNL Lifestyle Properties, Inc.*
            *James M. Seneff*
            *Thomas K. Sittema*
            *Bruce Douglas*
            *Robert J. Woody*
            *Robert A. Bourne*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)

On Monday, April 29, 2013 counsel for Defendants, James W. Thomas, Jr., and counsel for Plaintiffs, Christopher Gray, conferred by phone concerning the grounds for the Defendants' motion to dismiss the Class Action Complaint for failure to state a claim, pursuant to Local Rule 3.01(g), and were unable to agree on the resolution of this motion.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), the moving party's counsel hereby requests that this Court allow oral argument on this Defendants' Motion to Dismiss.  Defendants believe and therefore state that the most efficient and expeditious manner in which to resolve the matters set forth in this Motion would be accomplished by oral argument upon the same.  It is estimated that the total time for the argument is no more than one (1) hour.

i

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 1, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF filing system which system will send a notice of filing to:  Robert J. Pearl, Esq., 7400, Tamiami Trail North, Naples, Florida 34108.


/s/ Arpan A. Sura

**ARPAN A. SURA**

ii